[Civ. No. 18405. First Dist., Div. Two. Jan. 25, 1960.]

B. C. BORJESSON, Appellant, v. LLOYD E. SIMPSON, JR., et al., Respondents.

Appelbaum, Mitchell & Bennett, Stark & Champlin and Stanley E. Sparrowe for Appellant.

Partridge, O'Connell & Partridge and Pelton, Gunther, Durney & Gudmundson for Respondents.

STONE, J. pro tem.*—Appellant received personal injuries while a passenger in an automobile which was struck by a vehicle driven by one Simpson. Early in December, 1955, Simpson wished to buy a Ford automobile from his employer, respondent Rett-White Motor Sales Company of Walnut Creek, but none was available, as Rett-White's dealer quota had been exhausted. Cars in excess of a dealer's quota could be obtained if sold to a leasing agency. Cecil Whitebone, who owned 49 per cent of Rett-White, and a Ford dealership in San Francisco, organized respondent Whitebone Leasing Company, a purported car leasing agency. Rett-White secured vehicles for its ordinary customers by representing to Ford that the cars were to be sold to Whitebone Leasing. The Simpson car was one of 20 obtained by such a subterfuge. The order was placed December 1, 1955, and on the same day Rett-White filed a dealer's report of sale of new car with the California Motor Vehicle Department, together with an application for registration to Whitebone Leasing as registered owner, and Anglo-California National Bank of Oakland as legal owner. On December 19, the Motor Vehicle Department issued the certificate as requested. Rett-White also obtained license plates for the vehicle and had it driven from Michigan to Walnut Creek, where it was delivered to Rett-White, not Whitebone Leasing. Simpson signed a purchase order and took possession of the car January 5, 1956. He later executed a conditional sales contract dated January 10. On January 12, Rett-White mailed a check to Anglo, the legal owner, asking for endorsement of the Certificate of Ownership (pink) and a release. On Friday, January 13, Rett-White sent a Dealer's Report of Sale—Used Vehicle to the Department of Motor Vehicles, which was received Monday, January 16. The date of the sale was not inserted on the notice. Anglo endorsed and released the pink January 16 and mailed it to Rett-White, where an employee of Rett-White, authorized to sign for Whitebone Leasing, endorsed it as registered owner. The agent of Whitebone testified that she made the endorsement on January 18 or 19. The certificates of registration and ownership were then mailed to the Department of Motor Vehicles, but admittedly were

---

*Assigned by Chairman of Judicial Council.

received by the department after the accident occurred January 19, 1956.

By stipulation, the issue of ownership of the vehicle was tried by the court, which found that Simpson was the owner and that neither respondent Whitebone Leasing nor respondent Rett-White was an owner within the meaning of section 402[1] of the California Vehicle Code.* ▮ The liability of the owner of a vehicle as established by Vehicle Code, section 402, is purely statutory. "Ownership" as contemplated by the section, is not determined by the same rules of law as is the ownership of the ordinary chattel. Rather, ownership liability is determined by the registration record and certain transfer procedures prescribed by the Vehicle Code. These sections provide an owner who sells or transfers his vehicle and delivers possession at the time of sale a means of protecting himself from the liability imposed by section 402. The basic section is 178, which provides:

"(a) An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements:

"(1) When such owner has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(2) When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in Section 177, within the time prescribed in such section, or appropriate documents for registration of such vehicle pursuant to such sale or transfer."

Respondents concede that Whitebone Leasing did not endorse and deliver the certificate of ownership and registration as prescribed by subsection (1) of 178, subdivision (a).

---

[1]All Vehicle Code citations are to sections as numbered prior to the 1959 recodification.

*Section 402 provides that "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by any person using or operating the same with . . . permission, . . ." No portion thereof deals with the meaning or definition of the word "owner" except paragraph (f) which specifically provides that neither the conditional vendor nor the chattel mortgagee shall be deemed an owner for the purpose of such liability.

They contend they were protected by the Dealer's Notice of Sale of Used Vehicles given pursuant to section 177, subdivision (b), which in turn, they argue, is authorized by subsection (2) of 178, subdivision (a), *supra*. Section 177 reads as follows:

"(a) Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department.

"(b) Every dealer upon transferring by sale, lease or otherwise any vehicle, whether new or used, of a type subject to registration hereunder, shall, not later than the end of the next business day of the dealer, give written notice of such transfer to the department upon an appropriate form provided by it but a dealer need not give such notice when selling or transferring a new unregistered vehicle to another dealer."

Appellant contends that the Dealer's Notice of Sale of Used Vehicle relieved neither respondent Rett-White nor respondent Whitebone Leasing from the liability imposed by Vehicle Code, section 402, and cites four grounds of appeal in support of his position. They are: One, that the Dealer's Notice of Sale of Used Vehicle was not mailed by the "end of the next business day" as required by Vehicle Code, section 177, subdivision (b). Two, that the dealer's report of sale of a used vehicle was ineffectual because the date of sale was not inserted. Three, that an owner selling a used car through a dealer is not protected by the dealer's notice under 177, subdivision (b), but must himself comply with either 177, subdivision (a) or 178, subdivision (a), subsection (1). Four, that there was no bona fide sale of the vehicle prior to the mailing of dealer's notice, since Whitebone Leasing did not deliver the certificate of ownership (pink), as required by section 178, prior to the time Rett-White mailed the Dealer's Notice of Sale of Used Vehicle.

At the time this case was submitted, all four points raised by appellant were novel. At least none had been directly determined and there had been no comprehensive analysis of an owner's liability under Vehicle Code, section 402, in relation to registration and transfer of ownership. After submission of this case, the Supreme Court decided *Stoddart* v.

*Peirce,* 53 Cal.2d 105 [346 P.2d 774]. The opinion substantially answers the first two contentions made by appellant. The Supreme Court made a comprehensive review of the subject of ownership liability predicated upon Vehicle Code, section 402, in relation to the transfer and registration sections of the code. (186, 178, 177 and 176.) For the sake of brevity, we will not repeat the court's comprehensive and lucid review of the development of the principles of law involved as expounded in Stoddart. ▊ It is necessary, however, to set forth the seven basic concepts of the registration statutes which appear on page 119 of the opinion. They are:

"1. Registration of vehicles, somewhat like the recording of real property, is designed, among other reasons, for the protection of purchasers and injured parties, principally by affording identification of vehicle and person;

"2. To accomplish these purposes, registration must be speedy and substantially in compliance with the requirements set forth in the code section;

"3. Bonded dealers are authorized to omit some of the requirements prescribed for all other transferees and transferors;

"4. To implement the purpose of the statutes in those instances wherein a dealer need not immediately reregister, he may not place the vehicle upon the highway without attaching thereto a plate or tab identifying himself therewith, and may not transfer without giving notice thereof to the department in lieu of reregistration;

"5. To avoid an otherwise inequitable result, the dealer is exempted from an owner's liability when he transfers a vehicle to a third party;

"6. In order to prevent fraudulent practices (particularly the antedating of transfers) such a dealer is required to mail a notice of the transfer to the department within a specified time, as required of other transferors (although the time limitation differs);[13]

"7. In the case of all transferors (individual and dealer, alike) exemption from owner's liability becomes effective upon the mailing of such notice within the period provided.[14]"

With these authoritative principles in mind, we proceed to appellant's contentions on appeal. ▊ Appellant's first

---

"[13]Section 177, subdivision (a)."

"[14]Section 178."

ground, namely, that the failure of respondent Rett-White to mail the Dealer's Notice of Sale "not later than the end of the next business day" after the sale, vitiates the notice, was decided adversely to appellant's position by *Stoddart* v. *Peirce*. The Supreme Court held the only penalty for late mailing to be the loss by the dealer of the advantage of exemption from liability while the notice is in transit. (*Stoddart* v. *Peirce, supra,* pp. 119-120.) When the notice reaches the Motor Vehicle Department prior to the happening of the accident, as occurred in our case as well as in Stoddart, the notice under section 177, subdivision (b), becomes operative from the date of receipt. The court said at page 120: "It seems quite obvious that when the sections are considered as a whole, it must be held that when the dealer's notice reaches the department, and contains full information properly identifying the vehicle and all parties, and places each in its or his relative position in regard to the transactions which have taken place, all prior to the accident in question, then every purpose of the statutory requirements have been fulfilled, and complete protection has been given to the public.[15]"

Secondly, appellant argues that the failure to insert the date of sale in the blank provided by the Department of Motor Vehicles made the Dealer's Notice of Sale of Used Vehicles ineffective. This point was touched upon indirectly in Stoddart. However, it is dicta as to the precise point before us, since it concerned the failure to date the endorsement of the Certificate of Ownership rather than the Notice of Sale. Nevertheless, the reasoning of the court and its statement of the purpose of the registration provisions of the Vehicle Code and the notice which is intended by registration are persuasive. The court stated at page 117:

"Without now documenting a complete historical narrative of these various provisions of the code, it may be noted that originally the provisions now found in division III were adopted for the purpose of protecting innocent purchasers, and to afford identification of vehicles and of persons responsible in cases of accident and injury (*Henry* v. *General Forming, Ltd.,* 33 Cal.2d 223, 227 [200 P.2d 785]; *Dorsey* v. *Barba,* 38 Cal.2d 350, at p. 354 [240 P.2d 604]; *Rainey* v. *Ross,*

---

"[15]It should be noted that nothing contained herein indicates an opinion that in the event of failure to comply literally with the provisions of section 178, a transferor may be relieved of owner's liability by notice of or application for transfer of title which reaches the department subsequent to the accrual of a cause of action against the operator of the vehicle."

106 Cal.App.2d 286 [235 P.2d 45]). That is, they formed a recording system, designed to accomplish in regard to this mobile type of personal property some of the things that the real estate recording statutes accomplish in regard to land and its improvements.''

It follows that when the dealer's notice was received by the Motor Vehicle Department on January 16, notice was given to the world that prior thereto the dealer had sold the vehicle to Simpson. Whether failure to insert the date would deprive a dealer and a registered owner of the benefits of 177, subdivision (b), prior to receipt by the Motor Vehicle Department is not an issue, since the dealer's notice was received January 16, 1956 and plaintiff's cause of action did not accrue until January 19, 1956. The rationale of the Stoddart case impels the conclusion that from January 16, the records of the Motor Vehicle Department reflected that the dealer had sold the vehicle to Simpson and that the notice pursuant to Vehicle Code, section 177, subdivision (b), was effective from that date.

Appellant's third ground of appeal is that notice by the dealer pursuant to section 177, subdivision (b) protects only the dealer and not the owner. Appellant interprets section 178 as requiring the owner himself to comply with either 177, subdivision (a) (notice) or 178, subdivisions (a) (1), (endorsement and delivery of pink and white certificates as well as the vehicle.) We do not so interpret section 178, *supra.* Since subdivision 2 of 178 simply requires ''a notice as provided in section 177'' it refers to both subdivisions (a) and (b). Either notice is sufficient compliance with section 178, and the owner is protected if notice of the sale is given by the dealer who negotiates the transaction.

This interpretation takes into account the economic and social realities of present day automobile purchasing and financing as expressed in *Stoddart* v. *Peirce, supra,* page 118. Not only is time required for the dealer to arrange financing by the purchaser as expressed in Stoddart, but frequently the owner also requires time to complete the transfer. He may be purchasing under a conditional sales contract or by some other time payment system. The lien must be either satisfied or assumed by the purchaser as part of the financing referred to in Stoddart. The dealer who sells the used car frequently arranges the financing for both the seller and the purchaser including the release or transfer of the lien. The dicta of Stoddart concerning the reasons why the Legislature provided for notice under section 177, subdivision (b), to protect a

dealer, is clearly applicable to the owner who is selling or trading his vehicle as part of the same transaction. We conclude that the owner selling his vehicle, and the dealer making the sale, are both relieved of liability under Vehicle Code, section 402, if an effective notice of sale is given by the dealer pursuant to Vehicle Code, section 177, subdivision (b).

 This reasoning also applies to appellant's fourth contention, which is that there was no bona fide transfer from Whitebone to Rett-White prior to the mailing of the dealer's notice on January 13. Specifically, appellant contends that Whitebone, the registered owner, had not endorsed or delivered the pink to Rett-White prior to January 13, when Rett-White mailed the Dealer's Notice of Sale of Used Vehicle. The record discloses that on January 13, the conditional sales contract executed by Simpson, the buyer, was forwarded to Anglo-California Bank, the legal owner. It further appears that the 13th was a Friday, and that on the following Monday, January 16, Anglo signed the release as legal owner and forwarded the pink to Rett-White. An employee of Rett-White, who was an authorized agent of Whitebone, then endorsed the pink. The date of the endorsement was either January 18 or 19. Clearly, the endorsement for the release of the vehicle on the reverse side of the certificate of ownership had not been signed on January 13 when Rett-White mailed the Dealer's Notice of Sale pursuant to section 177, subdivision (b). The question is, does this nullify or vitiate the notice given by the dealer which we held (*supra*) protects the seller. The trial court found that there had been a bona fide sale prior to January 13, the date of the dealer's notice, and there is substantial evidence to support this finding. Physical possession of the vehicle had been delivered to Simpson, and he had executed a conditional sales contract as buyer on January 13 before the notice was mailed, and the conditional sales contract was mailed the same day to Anglo Bank for refinancing. All that remained was for Anglo to endorse the pink and forward it to Whitebone for endorsement. This was completed in the normal course of business. As we have pointed out, the Stoddart decision implies that the purpose of permitting a dealer to "give notice" pending registration, is to allow time to complete the mechanics of financing. The history of vehicle registration reflects a transition from strict compliance with actual reregistration to the more lenient method of filing a notice of sale. The reasons motivating this transition are stated at page 118 of *Stoddart* v. *Peirce, supra,* as follows:

"The first major addition appeared when changing economic and social conditions required modern financing. It then became necessary to separate the registration of the legal and equitable titles and to provide for the activities of the dealer in light of these changed conditions. Bonded dealers were authorized to acquire and hold vehicles without re-registering the same and, so long as they did not operate them upon the public highway, were exempted from giving notice to the department. They were, however, required to give notice 'immediately' upon transferring to another purchaser. The dealer was not required to reregister 'immediately,' but merely to mail a notice to the department. The lapse of time provided between notice and reregistration was provided in order to permit the dealer to effect financing of the new owner's purchase."

In footnote 12, page 118, the court says:

"Such leeway has never been provided for the nondealer transferor or transferee, who are required to reregister immediately *unless they transfer to or from a bonded dealer.*" [Italics added.]

Appellant also argues with some justification that Whitebone should not be protected by the dealer's notice since the entire transaction, insofar as it concerns Whitebone, was a sham. The car was intended for Simpson from the beginning and Whitebone was merely an accommodation owner, an instrumentality through which the car was obtained from Ford Motor Company for Simpson. It was delivered to Rett-White, the dealer, and in turn delivered by it to Simpson, Whitebone never having had possession. It is argued that Rett-White, the dealer, was the beneficial owner until the vehicle was finally transferred to Simpson for whom it was initially intended. We accept this statement by appellant as a correct analysis of the transaction, and it must be conceded that at all times Rett-White was the dealer-owner and Simpson the buyer. Whitebone was merely a figurehead. But this leads us to the conclusion that the dealer's notice given by Rett-White on January 13 and received by the Motor Vehicle Department January 16, three days before the accident, stated the ultimate truth concerning the transfer, namely, that the vehicle had been sold to Simpson and was then in the process of being transferred to him. The notice met the purposes and the requirements of vehicle registration, as expressed in Stoddart, as well as in *Rainey* v. *Ross,* 106 Cal.App.2d 286 [235 P.2d 45]; that is, to protect innocent purchasers and to afford

identification of vehicles and of persons responsible in cases of accident and injury. It could not be argued that appellant relied upon the prior registration showing Whitebone Leasing as the owner, since the correct information was given by the dealer's notice, which was received by the Motor Vehicle Department January 16, or three days prior to the time appellant's cause of action originated. Since the appellant was not misled by the prior registration, the final correct notice given pursuant to section 177, subdivision (b), complies with the requirements of the Vehicle Code and accomplishes the purposes of registration as hereinbefore expressed.

This is not to say that we approve of the actions of Whitebone Leasing and Rett-White as disclosed by the facts of this case. Cecil Whitebone, a witness who was disclosed to be the owner of Cecil Whitebone, Inc., San Francisco Ford dealership, and of Whitebone Leasing, Inc., a nondealership corporation, as well as a 49 per cent owner of the Rett-White dealership, testified that Ford Motor Company condoned their dealers' use of this method of securing cars. Nevertheless, a false notice of sale was given and a false registration request was made to the California Motor Vehicle Department. The original notice stated that Whitebone Leasing was the purchaser and, by means of this false statement, Rett-White secured license plates to drive the vehicle from Michigan to California. Yet, there is no provision in the California Vehicle Code which makes filing a false notice or false registration grounds for invalidating a subsequent truthful notice of transfer or registration. Any penalty arising out of a subterfuge in filing a false notice or false registration, which is superseded by a correct notice, must originate with the Legislature.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied February 24, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 23, 1960.