[Civ. No. 25381.   Second Dist., Div. Two.   Sept. 8, 1961.]

HELEN E. MEZA, Appellant, v. EDSEL G. RALPH et al., Defendants; CARLS MOTOR COMPANY, INC. (a Corporation), Respondent.

454

John E. Crooks for Appellant.

Murchison, Cumming & Baker for Respondent.

FOX, P. J.—On June 8, 1959, defendant Ralph was involved in an accident with the plaintiff. Ralph was driving a 1957 Ford automobile which he had purchased from Carls Motor Company, Inc., on May 2, 1959. In suing for damages for the injuries she received as a result of the accident, plaintiff joined as defendants both Ralph and the motor company. The motor company made a motion for summary judgment, which was granted. Plaintiff has appealed.

The sole issue is whether Carls Motor Company gave sufficient notice of the sale to the Department of Motor Vehicles to divest itself of ownership responsibility under section 402 of the Vehicle Code[1] (Owner's Liability Law).[2]

The motor company submitted three affidavits in support of its motion. One was by Alex Metrovich, who stated that he was a used car salesman for the motor company, and that on May 2, 1959, he sold a 1957 four-door Ford Sedan to Edsel Ralph; that at that time he made out the dealer's report of sale Number 2328607 and personally attached a copy to the windshield of said car, "together with the paper license plate bearing the same number." He delivered the car to the purchaser, Ralph, who drove it away. Affiant then took all the papers pertaining to the automobile, including a duplicate of said dealer's report of sale (used vehicle), to Mona M. Lennox, another employee of the motor company, who was in charge of processing them. Metrovich stated that the Ford bore a Texas license, and that it had been purchased by the

---

[1] All citations in the opinion refer to the sections of the Vehicle Code prior to the 1959 recodification.

[2] Section 402 provides that "(a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by any person using or operating the same with . . . permission . . ." No portion thereof deals with the meaning or definition of the word "owner" except paragraph (f) which specifically provides that neither the conditional vendor nor the chattel mortgagee shall be deemed an owner for the purpose of such liability.

motor company from Commercial Credit Corporation, which had repossessed it from the original purchaser.

The affidavit of Miss Lennox discloses that she turned all these papers over to Otilia O'Brien, owner of the Otilia O'Brien Title Service, for the purpose of effecting transfer of title to the Ford.

In her affidavit, Mrs. O'Brien stated, *inter alia,* that on May 14, 1959, she prepared a group of six registrations for the motor company including the papers involved in the transfer of the Ford automobile to Ralph; that she took the papers for each automobile and attached them to a Department of Motor Vehicles form, which is prepared in duplicate, and which lists the purchasers and pertinent data in connection with each vehicle listed; that she filed these documents with the Department of Motor Vehicles and delivered to the Department the motor company's check in the required amount; that one of the documents which was attached to the form was a dealer's report of sale, used vehicle (Exhibit C pertaining to the Ralph automobile); that she recalled that one document which was not available was an affidavit of repossession showing that the Ralph vehicle had been repossessed by Commercial Credit Corporation from the previous owner. Mrs. O'Brien received a receipt from the department, which contained a notation authorizing operation of the vehicle for a 60-day emergency period pending clearing of the registration. The absence of an affidavit of repossession from Commercial Credit Corporation was the reason why the transfer of title to the Ford could not be perfected at that time. Mrs. O'Brien further stated that she prepared and filed a similar form and list on May 28 which included the Ralph sale and to which she then attached the affidavit of repossession from Commercial Credit Corporation. These documents were again returned to the motor company on June 11 due to some clerical error or omission, the exact nature of which she did not recall.

Mrs. O'Brien again filed the papers with the department on June 18. The license was thereupon duly issued. However, the accident had already occurred on June 8th.

The only affidavit in opposition to the motion was filed by John E. Crooks, counsel for plaintiff. He states that the records of the Department of Motor Vehicles reflect that the report of sale Number 2328607—of the Ford to Ralph—was received at the Los Angeles office of the department on June 18, 1959; that this was the only application for registration

of said vehicle; that said records also reflect the same facts with reference to the bill of sale to Carls Motor Company, Inc., executed by Commercial Credit Corporation on April 20, 1959, being the same bill of sale referred to in said defendant's supporting affidavit.

The case was thereupon argued and submitted upon the foregoing record but, before a decision was rendered, counsel stipulated that the matter be restored to the court's calendar and reopened for the presentation of newly discovered evidence. The newly discovered evidence (defendant's Exhibits A and B) consisted of new, certified photo copies of Dealer Notice—Used Vehicle 1959, reporting sale Number 2328607, which covered the sale of the car here in question to Ralph. *Defendant's Exhibit A indicates that it was received by the Department of Motor Vehicles on May 25, 1959.* The date on Exhibit B. however, is not apparent to the naked eye, but respondent's brief tells us (and it is not disputed) that by the use of a magnifying glass the said date stamped thereon can be identified. Following the receipt of this new evidence and argument, the court granted the motor company's motion for summary judgment.

It is apparent that the affidavit filed in opposition to the motion raises no material issue of fact for it is hearsay. (*Whaley* v. *Fowler,* 152 Cal.App.2d 379, 382 [313 P.2d 97] ; *House* v. *Lala,* 180 Cal.App.2d 412, 416 [4 Cal.Rptr. 366] ; *Shea* v. *Leonis,* 29 Cal.App.2d 184, 188 [84 P.2d 277].)

In *Stoddart* v. *Peirce,* 53 Cal.2d 105 [346 P.2d 774], and *Borjesson* v. *Simpson,* 177 Cal.App.2d 365 [2 Cal.Rptr. 366], the problem of the dealer-seller's responsibility under section 402 is thoroughly explored and the pertinent sections of the Vehicle Code are analyzed and reviewed. These cases hold that even though the dealer fails to give the department notice by "the end of the next business day," as required by section 177, subdivision (b), the notice is effective from the date actually received by the Department. It is also pointed out that the purposes of the pertinent provisions of sections 177, 178 and 186 are to protect innocent purchasers and to afford identification of vehicles and of persons responsible in cases of accident, and not to enlarge the number of persons responsible under section 402. In the *Stoddart* case the court stated (p. 120) : "It seems quite obvious that when the sections are considered as a whole, it must be held that when the Dealer's Notice reaches the Department, and contains full

information properly identifying the vehicle and all parties, and places each in its or his relative position in regard to the transactions which have taken place, all prior to the accident in question, then every purpose of the statutory requirements has been fulfilled, and complete protection has been given to the public.''

██ Applying the principles of these authorities, it is unmistakably clear that the Motor Company was relieved from liability under section 402 upon receipt of the ''Dealer Notice —used Vehicle'' on May 25, 1959. *This was two weeks prior to the accident.* This Dealer's Notice contains the following statement: ''This stub form will constitute notice of sale to the Department as required by the Vehicle Code and will serve as such notice pending receipt and filing of the original copy of Dealer's Report of Sale with its accompanying application, required documents and fees.'' The Dealer Notice— Used Vehicle 1959 (defendant's Exhibit A) gives the sale number, the name and address of the purchaser, the make of the car, the body type, the year model, the last year registered, and the vehicle identification number. It also gives the name and address of the dealer, the dealer's number, and the signature of its authorized agent, and the date of sale. It also purports to bear the signature of the purchaser. However, neither the license number nor validation number is given, nor is the question answered ''Does Identification Number on Ownership Certificate and vehicle correspond?''

It would thus appear that the dealer's notice to the department contains ample information to sufficiently identify the vehicle and all parties and to place each in his relative position in regard to the transaction prior to the accident and that the purposes of the statutory requirements have been fulfilled and complete protection has been given to the public in accordance with the requirements of the *Stoddart* decision (p. 120.) In *Borjesson* v. *Simpson, supra,* the court rejected the argument that the failure to insert the date of sale in the blank on the form provided by the Department of Motor Vehicles made the Dealer's Notice of Sale—Used Vehicle, ineffective. It would likewise appear that the failure to fill in the three blanks in the Dealer Notice in the instant case should not render it ineffective because the notice did identify the vehicle, and the buyer and seller, and gave the date of sale and placed each party in his relative position in the transaction so that each might be identified in the event of an acci-

dental injury to a third party or if identification should be required for any other reason.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.