[Civ. No. 28479. First Dist., Div. Four. June 28, 1971.]

EDWARD L. LAUREANO et al., Plaintiffs and Appellants, v.
GEORGE J. CHRISTENSEN, Defendant and Respondent.

516

**COUNSEL**

Samuel P. McGeachy for Plaintiffs and Appellants.

Nagle, Vale, McDowall & Cotter and Vernon V. Vale for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**\*—Plaintiffs, Edward L. Laureano and Lydia Laureano, appeal from a summary judgment in favor of defendant, George J. Christensen.[1] Defendant was found not to be the owner of a certain motor vehicle under the owner's liability statute, Vehicle Code section 17150 (hereafter all statutory references herein will be to that code).

The owner's liability statute on which plaintiffs rely, Vehicle Code section 17150 (formerly § 402) provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property

---

\*Assigned by the Chairman of the Judicial Council.

[1]The appeal was taken prior to the entry of any judgment, from an order granting a summary judgment. The summary judgment was thereafter entered. Under the rule of liberal construction of notices of appeal (see 3 Witkin, Cal. Procedure (1954) Appeal, § 116, p. 2289) we treat the appeal as from the judgment, as obviously intended. And under authority of rule 2(c), California Rules of Court, we treat the notice of appeal as having been filed immediately after entry of judgment.

resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."

Vehicle Code sections 4000 and 4150 provide that all motor vehicles and their ownership must be registered with the Department of Motor Vehicles.

Vehicle Code section 4450 provides that upon such registration the department shall issue a "certificate of ownership" to the owner of the motor vehicle.

A declaration of defendant Christensen filed in support of his motion for summary judgment alleged the following. He had been the owner of a 1961 Thunderbird automobile. In March of 1967 he traded the vehicle to Turner Motors in San Bruno, California, in exchange for a new automobile, delivering to the dealer "the keys, the vehicle, the pink slip [certificate of ownership] and the white slip, and divesting himself fully of possession thereof or right to control said vehicle." On April 9, 1967, a "dealer's notice of sale [of the Thunderbird] showing sale by Turner Motors to Benjamin Mendoza was mailed to the Department of Motor Vehicles." On the next day, April 10th, while being driven by Benjamin Mendoza (a codefendant in the action below), the Thunderbird was involved in an accident allegedly resulting in injuries to the plaintiffs Laureano.

A reply declaration of the plaintiffs established that the dealer's notice of sale, allegedly mailed by Turner Motors from San Bruno, California on April 9, 1967, was received by the Department of Motor Vehicles in Sacramento on April 19, 1967, and that although Christensen had signed the pink certificate of ownership, neither he, nor anyone, had *dated* it.[2]

The trial court in granting summary judgment concluded that as to defendant Christensen there was no triable issue that he was the Thunderbird's "owner" on April 10, 1967, the day of the accident, within the meaning of that term as used in section 17150. Plaintiffs Laureano con-

---

[2]On the reverse side of the certificate of ownership, as pertinent, writing and blank space appear as follows:

"CERTIFICATION BY OWNER AND RELEASE OF OWNERSHIP
IMPORTANT! READ CAREFULLY

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
1. George J. Christensen
Signature on line 1 of the registered owner as shown        Date of Release"
on the face of this certificate releases his interest in
the described vehicle.

tended the contrary, thus posing the issue for our determination here. Their appeal rests upon the effect of the failure of defendant Christensen to *date* the Thunderbird's ownership certificate at the time he signed and delivered it to Turner Motors.

*"Owner"* as the term is used in section 17150 was defined in the case of *Borjesson* v. *Simpson,* 177 Cal.App.2d 365, 368 [2 Cal.Rptr. 366]. There the court stated: "The liability of the owner of a vehicle as established by Vehicle Code, section 402 [the substantially similar predecessor of section 17150], is purely statutory. 'Ownership' as contemplated by the section, is not determined by the same rules of law as is the ownership of the ordinary chattel. Rather, ownership liability is determined by the registration record and certain transfer procedures prescribed by the Vehicle Code. These sections provide an owner who sells or transfers his vehicle and delivers possession at the time of sale a means of protecting himself from the liability imposed by section 402." (See also *Stoddart* v. *Peirce,* 53 Cal.2d 105, 115 [346 P.2d 774]; *Singleton* v. *Perry,* 45 Cal.2d 489, 493 [289 P.2d 794].)

As relevant here the "certain transfer procedures prescribed by the Vehicle Code" which according to *Borjesson* v. *Simpson, supra,* determine motor vehicle ownership are sections 5751, 5753, 5600, and 5602.

Vehicle Code section 5751[3] provides that on a transfer of title the transferor "shall *write his signature and address* . . . in the appropriate spaces provided on the certificate of ownership" (italics added).

The closely adjacent section 5753 enlarges on the transferor's. duties. It provides: *"It is unlawful for any person to fail or neglect properly to endorse, date, and deliver* the certificate· of ownership and, when having possession, to deliver the registration card to a transferee who is lawfully entitled to a transfer of registration. . . ." (Italics added.)

Vehicle Code section 5600[4] provides that *title to a motor vehicle passes:*

---

[3]Vehicle Code section 5751: "Upon transfer of the title or interest of the registered owner only in a vehicle registered under this code, the registered owner shall write his signature and address and the transferee shall write his signature and address in the appropriate spaces provided on the certificate of ownership for the vehicle, and the legal owner shall write his signature in the space provided for the new legal owner indicating that he is to retain his legal title and interest."

[4]Vehicle Code section 5600: "No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements:

"(a) The transferor has made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed the certificate and card in the United States mail addressed to the department when and as required under this code with the proper transfer fee, together with the amount required to

(a) when the transferor has made *"proper endorsement and delivery of the certificate of ownership* and delivery of the registration card *to the transferee as provided in this code"* (italics added), and the transferee has delivered or mailed the papers to the Motor Vehicle Department, or; (b) the transferor has delivered or mailed the appropriate transfer documents to the department. (The latter alternative (b) concededly was here uncomplied with by defendant.)

Section 5602[5] prescribes the methods by which an owner who has made a bona fide sale of a motor vehicle may be *released of civil liability* arising out of the subsequent operation of the vehicle by another. It provides that further civil liability of the seller ends: (a) "When he has made *proper endorsement and delivery of the certificate of ownership* and delivered the certificate of registration *as provided in this code"*[6] (italics added), or; (b) when he has mailed or delivered to the department the notice of sale required by section 5900[7] or other appropriate transfer of ownership registration documents.

■ Strict compliance with Vehicle Code section 5602 is required to enable a transferring owner to escape the liability, imposed by section

be paid under Part 1 (commencing with Section 6001), Division 2 of the Revenue and Taxation Code with respect to the use by the transferee of the vehicle, and thereby makes application for a transfer of registration, except as otherwise provided in Sections 5905, 5906, 5907, and 5908.

"(b) The transferor has delivered to the department or has placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of the vehicle pursuant to the sale or transfer except as provided in Section 5602."

[5]Vehicle Code section 5602: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements:

"(a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for registration of the vehicle pursuant to the sale or transfer."

[6]It is notable that section 5602, subdivision (a) omits the additional requirement of section 5600, subdivision (a) that the transferee deliver or mail the transfer papers to the department.

[7]Vehicle Code section 5900: "Whenever the owner of a vehicle registered under this code sells or transfers his title or interest in, and delivers the possession of, the vehicle to another, the owner shall immediately notify the department of the sale or transfer giving the date thereof, the name and address of the owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

Vehicle Code section 5901, also referred to in section 5602, subdivision (b) (fn. 5, *ante*) relates to a dealer's notice of sale and is here inapposite.

17150 on account of an accident occurring before notice of the transfer is received by the Motor Vehicle Department. (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 115; *Uber* v. *Ohio Casualty Ins. Co.,* 247 Cal.App.2d 611, 616 [55 Cal.Rptr. 720].)

The issue before us narrows to the question whether the signing (but not dating) and delivery by defendant Christensen of the Thunderbird's ownership certificate was compliance with the statutory demand (Veh. Code, § 5602, subd. (a)) that he make "proper endorsement and delivery of the certificate of ownership . . . as provided" in the Vehicle Code.

We have concluded that defendant's failure to date the ownership certificate amounted to noncompliance with section 5602, subdivision (a). He did not make "proper endorsement and delivery" thereof *as provided by the Vehicle Code,* and the summary judgment must be reversed. The reasons for our conclusion follow.

We are confronted with several sections of the Vehicle Code, each differing somewhat in content, but all dealing with the transfer of ownership of a motor vehicle by a writing on its certificate of ownership. Section 5751 requires the transferor to *write* thereon his signature and address; section 5753 mandates him to endorse *and date*; and sections 5600 and 5602 provide respectively that title passes and the transferor's liability ends when he has made proper endorsement on, and has delivered, the certificate.

In our interpretation of these related sections we are aided by well-known rules of statutory construction. ■ The several provisions are to be regarded as blending into each other and as constituting a single statute (*Pesce* v. *Dept. Alcoholic Bev. Control,* 51 Cal.2d 310, 312 [333 P.2d 15]; *In re Porterfield,* 28 Cal.2d 91, 100 [168 P.2d 706]). ■ Significance must be credited and given to each of the sections (*People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 638 [268 P.2d 723]), and is possible each must be harmonized with the others and given effect (*People* v. *Trieber,* 28 Cal.2d 657, 661 [171 P.2d 1]). ■ We are bound to maintain the integrity of each of the sections if they may reasonably stand together (*Warne* v. *Harkness,* 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]).

■ Applying these standards by harmonizing and giving effect to each of the statutory provisions in question, one must conclude that for a motor vehicle transferor to make "proper endorsement" of the ownership certificate—thus passing title and avoiding future liability (§§ 5600, 5602)—he must not only "write" his signature thereon (§ 5751), but he must also "date" the writing (§ 5753). Any lesser requirement would un-

necessarily and unreasonably ignore one or more of the several statutory commands.

█ Further, it is fundamental that we must give effect to the legislative intent in adopting the motor vehicle registration laws. (*People v. Superior Court,* 70 Cal.2d 123, 132-133 [74 Cal.Rptr. 294, 449 P.2d 230].) █ A principal purpose of those statutes is to afford ready information to those injured or otherwise damaged by automobiles, concerning the persons liable under the owner's liability statute, section 17150. (See *Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 117; *Helton* v. *Stewart,* 198 Cal.App.2d 114, 120 [17 Cal.Rptr. 524]; *Meza* v. *Ralph,* 195 Cal.App.2d 453, 456 [15 Cal.Rptr. 754]; *Gorham* v. *Taylor,* 176 Cal.App.2d 600, 604 [1 Cal.Rptr. 546].) It has variously been said: that the purpose of the statutes is to afford a more certain indicia of ownership than mere possession for the protection of the public with respect to accidents, violations of law, and fraud upon innocent purchasers (*Cooke* v. *Tsipouroglou,* 59 Cal.2d 660, 666 [31 Cal.Rptr. 60, 381 P.2d 940]); that they "were enacted in the interest of the public welfare" (*Henry* v. *General Forming, Ltd.,* 33 Cal.2d 223, 227 [200 P.2d 785]); and that they are "for the purpose of identifying the vehicle in the hands of transferees. The state is concerned in the identity and ownership of cars operated upon the public highways" (*Parke* v. *Franciscus,* 194 Cal. 284, 292 [228 P. 435]).

The subject statutes generally show a purpose that the *date* of the change of motor vehicle ownership be made certain, otherwise the statutory goal would largely be defeated. An illustration is the case at bench. No direct record of the date of defendant Christensen's transfer of the Thunderbird exists. He says in his declaration that it was in "March of 1967." His ownership certificate, delivered to Turner Motors and later forwarded to the Motor Vehicle Department, does not show the date of the transfer. Had it been so dated, its eventual receipt by the department would have readily disclosed whether the accident occurred before or after the Thunderbird's sale by defendant. The dealer's later report to the department of the sale to Benjamin Mendoza is of no aid; that report simply dates the Mendoza sale. Thus plaintiffs have access to no recorded information of the Thunderbird's date of sale by defendant, or even to a date of sale written on the now available ownership certificate. If defendant's contention is sound, plaintiffs must accept and be bound by the statement that the sale took place sometime in "March of 1967." This is a result hardly intended by the Legislature.

We note also, as previously indicated, that section 5753 makes it an infraction (see Veh. Code, § 40000), punishable by a fine not exceeding 50 dollars (see Veh. Code, § 42001, subd. (a)), for the seller of an automobile to fail to *"date"* the ownership certificate before its delivery to the buyer. It would seem to strain reason to conclude that the Legislature intended that one who, upon a sale of his automobile, has *unlawfully* failed to *date* the ownership certificate's transfer, has nevertheless in the language of sections 5600 and 5602 "made proper endorsement and delivery of the certificate of ownership . . . *as provided in this code"* (italics added).

Our interpretation of the pertinent statutes does no violence to the language employed by the Legislature. Although "endorsement" (sometimes "indorsement") frequently refers to a "signature" on the back of a legal instrument, just as often it is used in the sense of such "writing" on the instrument as is necessary to its transfer, or to the transfer of the property to which it relates. "The word 'indorsement' comes from a Latin compound meaning 'on the back.' ▪ In its most general and literal signification, an indorsement is an incidental or subsidiary writing on the back of a paper or document, to the contents of which it relates or pertains. It is a word with a known legal signification, its meaning in a particular case depending on the context. ▪ The term may signify either the act of indorsing or the writing itself; and may imply a transfer by a writing upon the instrument. It has been defined as any writing on the back of a document; something written on the back of an instrument; something written on the outside or back of a paper, on the opposite side of which something else had been previously written; that which is written on the back of an instrument and which has relation thereto; a writing placed upon a completed instrument, usually upon the back." (42 C.J.S., p. 1368.) ▪ In the context of the case before us, the word may reasonably encompass the writing, i.e., the signature *and* date required under penalty of criminal sanction by section 5753 for transfer of a motor vehicle.

*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, principally relied upon by defendant Christensen, renders him no aid. In that case, the vehicle transferor, Peirce, situated as defendant is here, also signed but did not date a certificate of motor vehicle ownership and delivered it to a dealer. His ultimate transferee, Maines, (as here) was involved in an accident before the certificate reached the Motor Vehicle Department. But in *Stoddart* unlike our case the intermediate dealer, although tardily, did transmit a "Dealer's Notice" of the sale of the subject vehicle to the transferee, Maines, as provided by the then Vehicle Code section 177, sub-

division (b)[8] (now § 5901), which reached the department three weeks before the accident. (In the case at bench, as previously indicated, the dealer's notice, purporting to report a transfer on April 9, 1967, the day before the accident, was actually received by the department on April 19, 1967.)

In *Stoddart* v. *Peirce* the court pointed out (pp. 118-119) that one of the principal purposes of the subject statutes requiring timely registration, or other notice, of a motor vehicle's transfer, is to "prevent fraudulent practices (particularly the antedating of transfers)." The court continued (p. 120): "It seems quite obvious that when the sections are considered as a whole, it must be held that when the Dealer's Notice reaches the Department, and contains full information properly identifying the vehicle and all parties, and places each in its or his relative position in regard to the transactions which have taken place, all prior to the accident in question, then every purpose of the statutory requirements has been fulfilled, and complete protection has been given to the public." It was accordingly held that failure of Peirce to *date* the ownership certificate did not result in continued liability of the transferor, since the vehicle transfer was otherwise timely memorialized *before* the accident.

*Stoddart* v. *Peirce* is obviously inapposite to the case before us where the ownership certificate contained no evidence of the date of transfer, and the dealer's notice of sale arrived nine days *after* the accident and ten days after it was purportedly mailed.

We note that *Stoddart* v. *Peirce* reiterates the rule (p. 115) that strict compliance with the pertinent Vehicle Code sections "is required before such an owner may escape the liability imposed by section 402 [now section 17150] in regard to an accident which occurs *before* notice is received by the Department [citations]."

Following *Stoddart* v. *Peirce,* it has also been held in *Meza* v. *Ralph, supra,* 195 Cal.App.2d 453, and *Borjesson* v. *Simpson, supra,* 177 Cal.App.2d 365, that, despite earlier irregularities in following the pertinent Vehicle Code sections, the actual delivery of a dealer's notice of sale to the department *before* an accident, relieved the subject transferor from liability therefor.

We see no merit in defendant's contention that the construction we give the subject statutes operates inequitably and creates a "trap for the unwary." As we have pointed out, any further liability of defendant could

---

[8]Vehicle Code section 177, subdivision (b) (now § 5901) required that upon transferring a vehicle to a purchaser, a dealer give notice of the sale to the Department of Motor Vehicles upon an appropriate form, provided by the Department, "not later than the end of the next business day."

have been avoided by his either, (1) mailing or delivering a notice of the sale as provided in sections 5602, subdivision (b) and 5900, or (2) signing and dating (as clearly instructed—see fn. 2, *ante*) the certificate of ownership (§ 5602, subd. (a)). His failure to do either resulted in the uncertainty of the date of his Thunderbird's sale which the Legislature has tried to avoid.

The judgment is reversed.

Rattigan, Acting P. J., and Christian, J., concurred.