[Civ. No. 25148.   Second Dist., Div. Three.   Jan. 8, 1962.]

TRINITY UNIVERSAL INSURANCE COMPANY et al., Plaintiffs and Appellants, v. NATIONAL AMERICAN INSURANCE COMPANY et al., Defendants and Respondents.

Parker, Stanbury, Reese & McGee and Charles A. Harrison for Plaintiffs and Appellants.

Rosenfeld & Tucker, Richard M. Hall and Stephen J. Grogan for Defendants and Respondents.

SHINN, P. J.—The present action by Trinity Universal Insurance Company against National American Insurance

Company and others is for declaratory relief. The principal facts are that plaintiff issued to Miles P. Shook its comprehensive general liability policy covering a Cadillac automobile owned by Shook, which was in force, on August 6, 1958, when Wayne T. Williams, operating the Cadillac, with the consent of Shook, was involved in an accident in which the property of Charles W. Turner was injured. Claims for damages are asserted against Shook.

Shook in good faith had sold and delivered possession of the car to Williams before the accident occurred. The sole factual question at the trial was whether he had done all that was required of him under the Vehicle Code in order to be relieved of liability for the negligence of Williams.

If Shook was the owner of the car he would be equally responsible with Williams for the negligence of the latter, his liability, however, being limited in amount. (Veh. Code, §§ 17150-17151.) Having in good faith sold and delivered the Cadillac to Williams, Shook could have relieved himself of civil liability for the operation of the car in either of two ways, (1) by delivering to Williams the certificate of ownership properly endorsed and the certificate of registration, or, (2) by delivering to the Department of Motor Vehicles or placing in the mail addressed to the department a notice giving the date of the sale, his own name and address and that of the transferee with a description of the vehicle. (Veh. Code, § 5602.) Shook did not mail a notice to the department. The court found that prior to the accident he had not delivered the certificate of ownership to Williams, although he had delivered it to one Troutman. The sole question on the appeal is whether there was substantial evidence to support that finding. Instead of a finding of the ultimate fact of ownership the court made extensive probative findings. The essential findings were that Williams and Troutman were constructing a ketch as a joint venture; before the boat was finished they sold and delivered possession of it to Shook; this was by written agreement and through escrow; the entire subject of the joint venture was the construction of the boat; the sale of the boat disposed of all of the joint venture property; the consideration paid by Shook was divided between Troutman and Williams; the sale ended the joint venture and neither Troutman nor Williams thereafter was the agent of the other; when Shook endorsed and delivered the certificate of ownership of the Cadillac to Troutman

he requested that it be delivered to Williams and this was done, but not until after the accident had happened.

The evidence in the case is summarized in the brief of defendant Troutman as follows: "Prior to the signing of the escrow instructions, Shook, Williams and Troutman had agreed on the division of the property which they were to receive from Shook on the sale of the boat. The agreement which was consummated on July 25, 1958 was that Shook would pay $3,000 in cash, his equity in three houses, and the Cadillac automobile for the boat. It was agreed among them that Troutman would receive Shook's equity in two of the houses plus $1,000 in cash, and that Williams would receive Shook's equity in the third house, the Cadillac and $2,000 in cash. The bill of sale to the boat, the escrow instructions and the deeds to the houses were all signed at that time. The only thing left to be done was for Shook to get the pink slip to the Cadillac which was at the Bank of America and deliver it to Williams. Williams and Troutman decided to discontinue the building of the boat about six months before it was sold, and they had an accounting and divided up what was left in the bank account. Troutman did not want the Cadillac. He never drove the car. He did not have permission from Shook to drive it. The evening the deal was agreed upon Shook turned over the Cadillac and the keys to Williams, and gave him his permission to use the car. This occurred on July 25, 1958. After July 25, 1958 Williams had the Cadillac in his possession. Troutman never had possession of it."

Plaintiff contends, contrary to the court's finding, that the joint venture relationship continued after the sale and delivery of the boat to Shook. The only authority cited for the proposition is that after dissolution of a partnership or joint venture, each partner can bind the partnership by any appropriate act in winding up the partnership affairs. ▆▆ Plaintiff cites section 15033 of the Corporations Code as follows: "Except so far as may be necessary to wind up partnership affairs or to complete transactions begun but not then finished, dissolution terminates all authority of any partner to act for the partnership. . . ." No doubt this rule would be applicable to a joint venture relationship (28 Cal.Jur.2d, Joint Adventurers, § 14, p. 498), but it is of no aid to plaintiff. When the joint venture property was sold and by agreement the consideration received was divided between the joint adventurers, neither had authority to act for the other. ▆▆ When

Shook delivered the certificate of ownership to Troutman he constituted the latter his agent to deliver it to Williams. The court found, as a fact, that Troutman had no authority to receive it as the agent of Williams. There was ample evidence to support that finding. It necessarily follows that Shook and his insurer remained liable for the negligence of Williams to the extent of Shook's statutory liability.

The judgment is affirmed.

Ford, J., concurred.

A petition for a rehearing was denied January 31, 1962.