[Civ. No. 20426.   First Dist., Div. Two.   July 12, 1963.]

JAMES SOMERVILLE, Individually and as Guardian, etc., et al., Plaintiffs and Appellants, v. PROVIDENCE WASHINGTON INDEMNITY COMPANY, Defendant and Respondent.

Walkup & Downing, Bruce Walkup, R. Robert Wallach, Stewart Cureton and William B. Boone for Plaintiffs and Appellants.

Shirley, Saroyan, Cartwright & Peterson, J. Francis Shirley and Lowell H. Sucherman for Defendant and Respondent.

KAUFMAN, P. J.—This is an appeal from a summary judgment in favor of the respondent, Providence Wash-

ington Indemnity Company. Appellants, James and Jessie Somerville, filed their complaint for personal injuries sustained by them and their minor children on July 13, 1957, when the Somervilles were involved in an accident with a 1951 Ford sedan driven by one Victor Williams. The complaint alleged that at the time of the accident, defendant, James J. Kincaid, was the owner of the 1951 Ford which was operated with his consent by Williams and that prior to the time of the accident, respondent had issued and delivered to Kincaid a written policy of liability insurance which covered the 1951 Ford and was in full force and effect.

The complaint further alleged that Victor Williams died intestate as a result of the injuries suffered in the accident and thereafter, Robert Coward was duly appointed as administrator of his estate. After the administrator rejected appellants' claims as creditors of the estate, appellants filed action No. 473491 in San Francisco against Williams and Kincaid. On May 22, 1959, a judgment was duly entered in favor of the appellants and against Williams' administrator in action No. 473491 and paid by Williams' insurance company, The Travelers Indemnity Company. The complaint further alleged that respondent herein had reasonable notice and actual knowledge of action No. 473491 and refused to defend the action on behalf of the administrator; that no adjudication as to the liability of Kincaid was made in action No. 473491 and that prior to trial, appellants voluntarily filed their request for dismissal of that action as against Kincaid without prejudice. Thereafter, on October 23, 1959, appellants filed this action.

Respondent's answer alleged that Kincaid's defense in 473491 was that he sold and delivered the 1951 Ford to Williams on June 2, 1957; that on June 17, 1957, respondent made an offer of a contract of liability insurance to Kincaid for his garage and auto painting business on the express condition that the consideration therefor, the premium of $291.87, be paid in cash in advance before delivery of the policy contract. Respondent's answer further alleged that Kincaid never tendered the premium so that the policy was never delivered and was cancelled in September 1957; and in the alternative, that the policy applied only to Kincaid's garage and auto painting business and did not cover the 1951 Ford.

On June 14, 1961, respondent moved for a summary judg-

ment on the ground that this action had no merit because Kincaid did not own the Ford on July 13, 1957, and therefore could not give Williams permission to drive it on that day so that Williams could not be an additional assured driving an owned automobile under the policy. The motion was supported by the affidavit of Kincaid based on his deposition in 473491 which stated that after several days of talking, he and Williams came up with a deal on the sale of the 1951 Ford. First, Williams offered Kincaid $100 cash for the car and Kincaid accepted. After Williams had written a check for $75 on account, they talked further and Kincaid agreed to paint the car and accept $50 in cash and Williams' 1950 Ford coupe in payment. Kincaid continued: ''On this occasion at Victor Williams' home, I endorsed and dated the 1951 Ford's pink certificate of ownership. Then I asked him to sign it. He did. Then I delivered it to him. As he finished his signature I said, 'Now the car is yours.' He hesitated a moment thinking something over and he said, 'Well, maybe I better not keep this pink slip.' I asked him why. He said, 'I will have trouble with my insurance company being you still have possession of the automobile while you are painting. I think it is better for you to keep the pink slip and the car and bring the car with the pink slip.' And I agreed.

''During the week I painted the 1951 Ford. On Monday, June 3, 1957, I delivered possession of the newly painted 1951 Ford to Victor Williams at his shop. I there delivered the white certificate of registration to Victor Williams. It was inside the automobile. I handed to Victor Williams the pink certificate of ownership endorsed by me and dated, and signed and addressed by him. He placed it in a little cash box where he kept his petty cash in his office there at his place of business.

''Williams delivered to me his 1950 Ford and his check for $50 in full payment, as per our agreement. I cashed this check that day. I have seen a photocopy of this check.

''Thereafter Victor Williams kept and had possession of, and used, the 1951 Ford, and he kept the white certificate of registration in the automobile, and he kept and retained possession of the pink certificate of ownership.

''Victor Williams did not have the pink certificate of ownership on the 1950 Ford so he wrote out and gave to me a bill of sale on the 1950 Ford.''

The motion was also accompanied by the declaration of

Jean Williams as to her testimony by deposition in action 473491. Mrs. Williams remembered Kincaid and her husband talking about the transaction which involved a trade of cars and identified the check for $50 dated June 2 which her husband gave to Kincaid along with the 1950 Ford on that date. Mrs. Williams' recollection of the transaction was vague and she did not know whether it had been completed although she was present during the talks leading up to the transaction and at the time the exchange of documents took place, according to Kincaid. Mrs. Williams further stated that after the accident, Kincaid had been very concerned about the fact that the 1951 Ford was still in his name and that at the suggestion of her insurance agent, she notified the Department of Motor Vehicles about the transfer by a letter dated September 13, 1957. The letter erroneously gave the date of the sale as June 10, 1957, and stated that she did not know if the pink slips to the two vehicles had been transferred.

The declaration of Gary Williams based on his deposition in 473491 stated that he was in the house at the time of the transaction but was not paying too much attention. Gary remembered seeing the white registration certificate after the accident but did not remember ever seeing a pink slip. The declaration of Arthur Kennedy, the uncle of Victor Williams, based on his deposition in 473491 stated that he had seen the white certificate of registration in the car. The declaration of respondent's attorney in support of the motion for summary judgment quoted a portion of the policy indicating that the named insured was the Kincaid auto painting business, and defined the hazard insured against as: ''The ownership, maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person.''

The counteraffidavit of Bruce Walkup in opposition to the motion for summary judgment stated that he was one of the attorneys for the appellants in 473491; that the declarations based on the depositions in 473491 are not completely quoted by the respondent; that the deposition of Kincaid taken in action 473491 indicates that at the time of the deposition and trial, Kincaid was an inmate of the California State Prison at Soledad as he had been convicted of robbery in the second degree; that Kincaid discussed his deposition with his insurance company and others.

The counteraffidavit further avers that the official records of the Department of Motor Vehicles show that on July 13, 1957, when the accident occurred, Kincaid was the registered owner of the 1951 Ford involved in the accident and that Victor Williams was the registered owner of the 1950 Ford; that the pink slip for the 1951 Ford has never been found or delivered; that Arthur Kennedy in action 473491 also testified that he made a search of all the papers and belongings of Williams, did not find any pink slip or certificate of ownership pertaining to the 1951 Ford, and that he was the only person assisting Mrs. Williams with valuable papers, etc. after her husband's death; that the deposition of Gary Williams, in addition to the matters related above, indicated that Gary did not think that his father had given Kincaid a bill of sale, and also had never seen the pink slip for the 1951 Ford; that Mrs. Williams also testified she did not know whether the transaction had been completed and had never seen the pink slip to the 1951 Ford. She found the pink slip for the 1950 Ford in its original envelope in 1958. The counteraffidavit also quotes a portion of the policy No. LCA 2613, issued by the respondent to Kincaid, indicating that the policy was a comprehensive general automobile liability policy, effective from June 17, 1957, to June 17, 1958; that under the insuring agreement, the respondent agreed: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of *any* automobile."

The policy further stated that: "The unqualified word 'insured' includes the named insured and also includes . . . (2) under Coverages A and C, any person while using an

owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, . . .''

On a motion for summary judgment under section 437c of the Code of Civil Procedure, the purpose of the motion is to discover whether or not there are triable issues of fact. If the opposition affidavit sets up facts showing that there are triable issues of fact, such facts must be accepted as true and the motion denied. The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods of determination of issues of fact (*Hatch* v. *Bush,* 215 Cal.App.2d 692, 701-702 [30 Cal.Rptr. 397]). Affidavits of the moving party must be strictly construed and those of his opponent liberally construed. The opposing affidavit must be accepted as true, and need not be composed wholly of strictly evidentiary facts (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264]). The issue to be determined by the trial court in consideration of a motion for summary judgment is whether or not any facts have been presented which give rise to a triable issue or defense, and not to pass upon or determine the true facts in the case (*Nini* v. *Culberg,* 183 Cal.App.2d 657 [7 Cal.Rptr. 146] at p. 661). Any doubts are to be resolved against the moving party (*Family Service Agency of Santa Barbara* v. *Ames,* 166 Cal. App.2d 344, 351 [333 P.2d 142]).

A summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact (*deEcheguren* v. *deEcheguren,* 210 Cal.App.2d 141 [26 Cal.Rptr. 562]). The statute (Code Civ. Proc., § 437c) provides that the facts in the affidavits shall be set forth with particularity. To satisfy this requirement, the movant's affidavits must state all of the requisite evidentiary facts and not merely the ultimate facts or conclusions of law or conclusions of fact.

In the light of these rules, we look at the supporting declarations and the counteraffidavit. Respondent's motion for summary judgment was based on Kincaid's alleged transfer of the vehicle to Williams and the fact that its policy was not in effect, and in the alternative that if in effect, the coverage of the policy did not include the 1951 Ford. We have concluded that the counteraffidavit raises serious

questions of fact as to whether or not Kincaid complied with the provisions of the Vehicle Code to relieve himself of ownership liability under the provisions of the Vehicle Code, the credibility of Kincaid, and the scope and coverage of the policy issued, and whether or not the policy of respondent was in force. We will discuss each of these matters in detail below.

The proper solution of the first question presented depends upon sections 177,[1] 178 and 402 of the Vehicle Code. Section 177, so far as relevant, provides: "Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

Section 178 provides: "(a) An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements:

"(1) When such owner has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(2) When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in Section 177, within the time prescribed in such section, or appropriate documents for registration of such vehicle pursuant to such sale or transfer.

Our Supreme Court in its only recent opinion interpreting these provisions of the Vehicle Code, *Stoddart* v. *Peirce*, 53 Cal.2d 105 [346 P.2d 774] (an opinion oddly enough not cited by either of the parties hereto), stated (at p. 115): "There is no doubt that the word 'owner' as used in section 402 for the purpose of creating a liability thereunder, is not synonymous with that word as used in the ordinary

---

[1] All citations refer to the sections of the Vehicle Code as they existed prior to the 1959 recodification.

sense of referring to a person or persons whose title is good as against all others,'' as under the Vehicle Code, there may be several such owners at any one time so that one or more persons may be an owner and thus liable for the injuries of a third person even though no such owner possesses all of the normal incidents of ownership.

The court further found that the purpose of section 402 and the related provisions was to protect innocent purchasers and to afford identification of vehicles and of persons responsible in cases of accident and injury while at the same time providing for the separation of the legal and equitable titles to provide for the activities of dealers and modern practices of financing. The court outlined the basic concepts of the statute and we quote, in part, at page 119: "7. In the case of all transferors (individual and dealer, alike) exemption from owner's liability becomes effective upon the mailing of such notice within the period provided.''

As in the instant case it is uncontroverted that the car and white registration certificate had been transferred but the Department of Motor Vehicles not notified of the exchange of vehicles on the date of the accident, one of the crucial facts is Kincaid's compliance with subdivision (1) of section 178. Although Kincaid's declaration alleges such compliance by stating that he delivered the vehicle as well as the white certificate of registration and the pink certificate of ownership to Williams at the time of the transfer, the counteraffidavit raises considerable doubt that the pink certificate of ownership was transferred at the time Williams obtained possession of the car. It is also not clear whether the transaction was completed, if at all, and whether on June 2 or June 3. Williams, the only other participant in the transaction was dead at the time of the prior trial. The pink slip was never found among the papers of the deceased and Gary Williams controverted Kincaid's statement concerning the bill of sale. ■ Furthermore, Kincaid's admitted conviction of a felony (*People* v. *Jones*, 180 Cal.App.2d 95 [4 Cal.Rptr. 98]) and interest in the prior proceeding at which his deposition was taken (*Shields* v. *Shields*, 200 Cal.App.2d 99 [19 Cal.Rptr. 129]; *People* v. *Jackson*, 152 Cal.App.2d 397, 403 [313 P.2d 931]) raise significant questions of fact as to his credibility. ■ Thus, there is a dispute of fact as to this essential requirement of section 178.

■ The purpose of sections 177 and 178 is not to furnish a trap whereby some unwary individual may be held liable

for the actions of another over whom he has no control but to protect parties, to register transfers and sale of property, and to protect third parties injured by operation of the vehicle. As *Stoddart* v. *Peirce, supra,* involved a bonded dealer, the Supreme Court pointed out that while bonded dealers are authorized to omit some of the requirements prescribed for all other transferees or transferors, no such leeway has been provided for the nondealer, transferor or transferee, who are required to re-register *immediately*.

It has been held repeatedly that strict compliance with the provisions of section 178 (and its allied sections) is required before an owner may escape the liability imposed by section 402 in regard to an accident which occurs *before* notice is received by the Department of Motor Vehicles (*Helton* v. *Stewart*, 198 Cal.App.2d 114 [17 Cal.Rptr. 524] ; *Stoddart* v. *Peirce, supra,* p. 115). The appellants herein are third parties entitled to the protection of the above statutes (cf. *Dana* v. *Sutton Motor Sales*, 56 Cal.2d 284 [14 Cal.Rptr. 649, 363 P.2d 881].) *Venne* v. *Standard Accident Ins. Co.*, 171 Cal.App.2d 242, 247 [340 P.2d 30], cited by respondent, and *Trinity Universal Ins. Co.* v. *National American Ins. Co.*, 198 Cal.App.2d 811 [18 Cal.Rptr. 353], are ''insurer'' cases concerning the respective rights and duties of the insurers of the vendor and the vendee, and not the rights of third parties, as in the instant case.

Respondent, citing *Norris* v. *Pacific Indemnity Co.*, 39 Cal.2d 420 [247 P.2d 1], further argues that this is not an ownership liability case as Williams was not driving with Kincaid's permission and Kincaid could not be an ''owner'' for purposes of section 402. Aside from the fact that the *Norris* case concerned an action by the insured against his own insurance company, this court (division one) in *Harbor Ins. Co.* v. *Paulson*, 135 Cal.App.2d 22, 28 [286 P.2d 870], after pointing out that the *Norris* case was in no way contradictory, held that: ''The result of the failure of a vendor in this state to meet the requirements of the Vehicle Code is that, while as between him and his vendee, the latter becomes the owner of the vehicle, as to third parties who are injured by the vehicle still registered to him as owner, the vendor remains the owner and the vendee is using the vehicle with his permission. While this may seem an artificial rule, and is contrary to that of most states, nevertheless the vendor has it in his power to fully protect himself by the very simple ex-

pedient of complying with the law. Section 177 makes it his duty, upon a sale or transfer and delivery of possession, *immediately* to send the department the notice required by that section.''

As to the coverage of the policy issued by the respondent, respondent's affidavit alleges first that the policy was never in force as the premium was not paid and that the policy was cancelled in September of 1957. It is impossible to determine from the affidavits whether the policy was ever delivered. If never delivered and no premium paid, then, of course, no liability on the part of the respondent would exist. But the affidavits leave this question in doubt and the facts should be ascertained on a trial. Respondent also avers that the 1951 Ford driven by Williams was specifically excluded from the hazards covered by the policy. Appellants' counteraffidavit cites other provisions of the insuring agreement of the policy issued to Kincaid which indicate that coverage extends to any automobile used with the permission of the named insured. As indicated above, it is well settled that if Kincaid had not met all the requirements of the Vehicle Code for a transfer of the 1951 Ford, Williams was driving the car with his permission at the time of the accident (*Harbor Ins. Co.* v. *Paulson, supra*). Thus, respondent may be liable under its policy. There are, however, significant questions of fact as to the coverage and scope of the policy and as to whether or not it was delivered and the premium paid.

In view of the fact that the record before us discloses that there are a number of triable issues of fact, the summary judgment is reversed and the cause is remanded to the court below for a trial on the merits.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied July 30, 1963, and respondent's petition for a hearing by the Supreme Court was denied September 4, 1963.