ROBERT VIGOREN, Appellant, *v.* TRANSNATIONAL INSURANCE COMPANY, Respondent.

No. 6168

December 7, 1970                    482 P.2d 96

*Wiener, Goldwater & Galatz,* of Las Vegas, for Appellant.

*Austin & Thorndal,* of Las Vegas, for Respondent.

## OPINION

By the Court, Thompson, J.:

This is an appeal from a summary judgment granted to Transnational Insurance Company in an action for declaratory relief filed against A. E. Ferrand, Steven Ferrand, William Ferrand and Robert Vigoren. Only Vigoren appeared to defend.[1] The purpose of the action was to secure an adjudication that Transnational's automobile insurance policy issued to Richard Doherty for his Chrysler automobile does not cover accidental injuries sustained by Robert Vigoren while a passenger in that car. That policy insured Doherty, and any other person using the automobile with his express or implied permission against loss for liability imposed by law for damages arising out of the ownership, maintenance or use thereof. It was Transnational's contention that Doherty was not the owner of the car when he purchased the insurance policy since he had sold it to A. E. Ferrand upon conditional sale and Ferrand thereafter enjoyed the exclusive possession and control of the vehicle. Subordinately, Transnational contended that when the accident occurred the driver of the car, Steven Ferrand, son of A. E.

---

[1] Hartford Accident and Indemnity Company was permitted to intervene in the action since it had issued an automobile policy to the father of Robert Vigoren which policy provided uninsured motorist coverage. The summary judgment which we here review did not directly concern Hartford.

Ferrand, was not driving with the express or implied permission of Doherty and that Doherty's policy of insurance therefore was not available to Robert Vigoren, the injured passenger. The district court agreed with Transnational and entered summary judgment in its favor. This appeal by Vigoren followed.

All relevant facts, except one, are undisputed. Robert Vigoren, a passenger in the back seat of the Chrysler automobile, was blinded by the accidental discharge of a shotgun, while he, Steven and William Ferrand were returning from a hunting trip. At that moment, legal title to the car was in Richard Doherty, conditional vendor. The right to possession was vested in A. E. Ferrand, conditional vendee. Ferrand was uninsured. The Motor Vehicle Department was not notified of the conditional sale by Doherty to Ferrand. The legal registration was not changed, Doherty retained title and remained personally liable to the bank for mortgage payments on the car. When the conditional sale was made, Doherty maintained an insurance policy on the car with Transnational. Thereafter, he allowed the policy to lapse. However, before the accident happened, Doherty reinstated that policy since he was apprehensive that Ferrand may not have purchased insurance coverage. These facts are not in dispute. A material circumstance attending the reinstatement of Transnational's policy is in dispute, however. Doherty asserts that he fully advised the Transnational agent of the conditional sale to Ferrand at the time he reinstated the policy. The agent denies this assertion of fact. Accordingly, it is the position of the appellant Vigoren that a genuine issue of material fact exists which must be resolved by trial and precludes summary judgment.

1. For the purposes of summary judgment we must accept Doherty's statement that Transnational was aware of the conditional sale to Ferrand when it reinstated the policy. This is a material fact bearing upon waiver. Transnational may not rely upon the change of beneficial ownership of the car to defeat coverage if it had knowledge of the conditional sale when it elected to reinstate the policy and receive a premium therefor. Such knowledge and reinstatement of the policy in spite of it, is a waiver of the right to rely upon the precise wording of the omnibus clause of that policy. Cf. Violin v. Fireman's Fund Ins. Co., 81 Nev. 456, 406 P.2d 287 (1965). For this reason alone the summary judgment must be reversed and this issue of material fact submitted for resolution at trial. If the trier of facts finds that the Transnational agent did not

know of the conditional sale to Ferrand, further legal questions of coverage will emerge and must then be resolved.

2. Waiver is an affirmative defense. NRCP 8(c). Of the named defendants, only Robert Vigoren appeared and he did not plead that defense. This is understandable since he cannot be presumed to have known of the disputed circumstances attending the reinstatement of Doherty's insurance policy. Those disputed circumstances now appear of record and trial has not occurred. We direct the district court to allow Vigoren to amend his answer accordingly.

Reversed and remanded for trial.

COLLINS, C. J., BATJER and MOWBRAY, JJ., concur.

ZENOFF, J., dissenting:

Robert Vigoren was struck in the face and blinded by a shotgun blast on October 16, 1966. He and two other youths, William Ferrand and Steven Ferrand, were returning from a hunting expedition in Clark County, Nevada, when the loaded shotgun which had been placed on the front seat of the car by William Ferrand discharged from the movement of the car.

At the time of the occurrence, legal title to the car was in Richard Doherty, who had purchased the car in August of 1965. Though Doherty had sold the car to A. E. Ferrand in June of 1966 under a conditional sales contract, no change of legal registration was made with the Department of Motor Vehicles, Doherty retained possession of the title, and he remained personally liable to the Bank of Nevada for the chattel mortgage payments. After the accident, Ferrand ceased paying for the car, Doherty repossessed it and soon resold it, this time filing the required change of title.

At the time of the accident, Doherty maintained an insurance policy on the car with Transnational Insurance Company. The policy was issued to Doherty on May 2, 1966 but was allowed to lapse from May 19 to June 14, 1966. Doherty explained his reinstating the policy shortly after the sale of the car because ". . . I became apprehensive that he might not carry insurance on it." The policy included liability, comprehensive and collision coverage. Doherty asserted that he informed the Transnational agent of the conditional sale to Ferrand at the time he reinstated the policy, though the agent disagreed.

Because Ferrand at no time had insurance coverage on the car, Transnational became apprehensive that it might have to

compensate Vigoren under the omnibus clause of its policy with Doherty. On February 16, 1968 Transnational filed its complaint for declaratory relief against A. E. Ferrand, William Ferrand, Steven Ferrand and Robert Vigoren, requesting the district court to declare the policy issued to Doherty unavailable for the injuries to Robert Vigoren. Transnational further asked the court to declare that it had no obligation to defend any litigation arising out of the accident.

Hartford Accident and Indemnity Company's interest arises out of its uninsured motorist coverage in a policy issued to Robert Vigoren's father. Under this coverage, Hartford might be obligated to compensate for Robert's injuries should Transnational not be so obligated.

By respective motions for summary judgment Transnational sought a declaration that its policy did not apply while Robert Vigoren and Hartford sought a declaration that it did. Transnational's motion for summary judgment was granted and that of Robert Vigoren and Hartford was denied.

It is from this order, which in effect held the Transnational policy to provide no coverage whatsoever for this accident, and which removed Transnational from any obligation to defend any litigation arising from the accident, that Robert Vigoren and Hartford appeal.

1. Chapter 485, Nevada's Motor Vehicle Safety Responsibility Act, provides that a motor vehicle liability policy refers to an owner's policy of liability insurance and that such owner's policy shall insure the person named therein and any other person, as insured, using any such motor vehicle with the express or implied permission of such named insurer, against loss from the liability imposed by law for damages arising out of the ownership or use of such motor vehicle. NRS 485.3091, §§ 1 and 2(b). Those provisions are popularly known as the "omnibus" clause in liability insurance contracts.

We are not now concerned in this case with the doctrine of insurable interest as it would apply as a prerequisite to a valid automobile liability insurance policy. No insurable interest need be shown to support an omnibus clause in an automobile insurance policy. Ohio Farmers Insurance Co. v. Lantz, 246 F.2d 182 (7th Cir. 1957); Western Casualty and Surety Co. v. Herman, 209 F.Supp. 94 (E.D.Mo. 1962), aff'd 318 F.2d 50 (8th Cir. 1963); cf. United Services Automobile Ass'n v. Howe, 208 F.Supp. 683 (D. Minn. 1962); see also Annot., Liability Insurance: Insurable Interest, 1 A.L.R.3rd 1193 (1965). The omnibus clause is a creation resulting from modern desires to protect innocent victims of automobile accidents.

Unlike other forms of insurance, such as life and property insurance, its validity is not based on a potential risk of loss. That is, there need be no "insurable interest" in the traditional sense of that phrase. The only requirement is that the insuring party be the owner of the vehicle. As has been pointed out, the wagering contract rationale for requiring insurable interest is inapplicable in this area. United Services Automobile Ass'n v. Howe, supra, at 685. Moreover, the insurance company is protected against irresponsible acts of the insuring party by the requirement of ownership, just as it is protected in other areas of insurance by the requirement of insurable interest. The fact that Doherty had no "insurable interest" does not in itself defeat the validity of the policy. The question is solely one of ownership.

Section 485.090 defines "owner" as meaning "a person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale . . . with an immediate right of possession vested in the conditional vendee . . . then such conditional vendee shall be deemed the owner for the purposes of this chapter."

Except as to the seller's failure to transfer the title certificate and the fact of his renewal of a liability policy that he purchased when he still had ownership and possession of the car the bona fides of the sale are not questioned. Fraud in the transaction might well be a serious consideration in this problem but it is not presented. The seller thought he was obtaining more protection by retaining the title and renewing his old insurance but his ignorance does not alter the fact that so long as the payments under the conditional sales contract were current he had no incidents of ownership. He did not have the right to take the automobile from the buyer nor to deprive him of its use. He could not direct the use of the car nor direct by whom it could be operated. He had no control whatsoever of the automobile other than to retake its possession and terminate the buyer's rights as an owner if the buyer failed to pay.

2. The real problem for our determination is whether this conditional sale was sufficiently perfected as to validly transfer ownership of the car from the seller to the buyer. In some states failure to complete the registration requirements such as we have in NRS 482.400 and 482.426 voids the transaction, thus leaving the ownership in the seller. Nevada's registration statute does not invalidate the transaction on failure to complete registration requirements. The infraction is a misdemeanor but the sale is not affected.

Under the statutes of California, Kansas, Missouri and Montana, ownership does not transfer until all registration requirements are met. Somerville v. Providence Washington Indemnity Co., 32 Cal.Rptr. 378 (Cal.App. 1963); Maryland Cas. Co. v. American Family Ins. Group, 429 P.2d 931 (Kans. 1967); Greer v. Zurich Insurance Company, 441 S.W.2d 15 (Mo. 1969); Ostermiller v. Parker, 451 P.2d 515 (Mont. 1968) (cert. den. sub nom. Glens Falls Insurance Co. v. Nationwide Mutual Ins. Co., 394 U.S. 975 (1969)). The cited cases naturally relate to their statutes, which are clearly different from NRS 482.399: "No transfer of the title or any interest in or to a vehicle registered under this code shall pass [until the certificate of title and registration card have been properly filed]." (E.g., Cal. Vehicle Code, § 5600; "the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void." Kans. Stats., Annot., § 8–135(c)(6). See also Vernon's Mo. Stats., Annot., § 301–210(4) (1963), and Revised Codes of Montana, Annot., § 53–109(d) (1961).)

Under the statutes of Colorado, Indiana and Washington, ownership transfers even though not all registration requirements are met. United Fire and Casualty Co. v. Perez, 419 P.2d 663 (Colo. 1966); Royal Indemnity Insurance Co. v. Shue, 182 N.E.2d 796 (Ind. 1962); Beatty v. Western Pacific Insurance Co., 445 P.2d 325 (Wash. 1968). The statutes of these states are more similar to those of Nevada. They do not specify that a purported sale is void or invalid for noncompliance with registration requirements. See *Colo.* Rev. Stats., Annot., §§ 13–6–8, 13–6–9 (1963); Burns Ind. Stats., Annot., § 47–2502 (1965); Rev. Code of Wash., Annot., § 46–12.101 (1970). *But cf.* Code of Va., Annot., § 46.1–87, as construed in Nationwide Insurance Co. v. Storm, 106 S.E.2d 588 (Va. 1959).

But in Nevada the omnibus statute and under NRS 41.460(a), the family purpose law, are like all others in the respect that a conditional vendee is the owner. In this case, for the purposes of the omnibus clause the sale of the car by Doherty was completed and his buyer was the owner in possession.

3.   Hartford asserts, without citation of authorities, that if Transnational's agent knew Doherty was not the owner of the automobile when the insurance was obtained, Transnational is estopped from denying liability on the ground Doherty was not the owner and thereby did not have insurable interest.

Disregarding the reference to insurable interest, neverthe-less, the arguments of waiver or estoppel are not appropriate. On estoppel (reliance): Zunino v. Paramore, 83 Nev. 506, 509, 435 P.2d 196 (1967). Ferrand, the buyer, makes no claim that he did not buy the liability insurance because he relied upon Doherty's policy. If he did, estoppel might be a question. Instead, the factual dispute of whether the agent knew or did not know of the sale is not one that Hartford can rely upon. It would only be Doherty's concern if his company tried to avoid responsibility as to him if he was the owner, but he was not the owner at the time of the injury.

On the subject of waiver, to charge the insurance agent with the responsibility of being knowledgeable in the law, that is, with knowing all the legal consequences of each policy he sells, is unreasonable. The answer here is best provided by the declaration of where the ownership of the automobile lies.

I dissent.