[No. F002510. Fifth Dist. Mar. 6, 1985.]

DANIEL GREGORY DURBIN, Plaintiff and Appellant, v.
DAVID RONALD FLETCHER et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

[1]Parts II, III and IV are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

McCormick, Barstow, Sheppard, Wayte & Carruth and James P. Wagoner for Plaintiff and Appellant.

Mushines, Baradat & Van Doren, Russell D. Cook, Borton, Petrini & Conron, James J. Braze, Richard D. Altimus, Michael Seitz, Chinello, Chinello, Shelton & Auchard and Daniel I. Aller III for Defendants and Respondents.

## OPINION

**MARTIN, J.**—Plaintiff appeals from summary judgments entered in favor of defendants John Brewer, individually and doing business as Brewer's Car Corner; Fresno Datsun, a corporation; and Calvin John Doerksen, in a personal injury action arising from a motor vehicle accident.

Defendants Brewer, Fresno Datsun and Doerksen all moved for summary judgment on the grounds they were not owners of a 1976 Camaro involved in the subject accident. Plaintiff opposed the motions and moved for partial summary judgment contending the three defendants were owners of the Camaro for purposes of civil liability. In further opposition to Brewer's motion, plaintiff argued there was a material issue of fact whether defendant Fletcher was acting in the course and scope of his employment with Brewer while driving the 1976 Camaro at the time of the accident.

### STATEMENT OF FACTS

On December 12, 1980, plaintiff was injured in a motor vehicle accident at the intersection of Van Ness Avenue and Divisadero Street in the City of Fresno. The accident occurred when a 1976 Chevrolet Camaro driven by defendant David Ronald Fletcher struck the vehicle in which plaintiff was a passenger. Department of Motor Vehicle (DMV) records indicated defendant Calvin John Doerksen was the registered owner of the Camaro on the date of the accident.

During the eight days preceding the accident, defendant Doerksen transferred possession of the Camaro to defendant Fresno Datsun, which in turn transferred possession to defendant Brewer's Car Corner. Brewer's in turn transferred possession of the Camaro to defendant Fletcher. The facts of each transfer of possession are discussed in turn.

*Transfer by Doerksen to Fresno Datsun.*

Defendant Doerksen purchased the 1976 Camaro (the vehicle) in 1978. On December 4, 1980, he traded the vehicle at defendant Fresno Datsun for a 1979 Datsun 810. Doerksen delivered the vehicle and the registration

card to Fresno Datsun on December 4. He did not deliver the ownership certificate (pink slip). A bank was the "legal owner" of the vehicle and had the pink slip at that time. Doerksen never dated or signed the pink slip. However, he did sign a "federal odometer mileage statement and notice of sale or transfer of a vehicle" (notice of transfer) which was retained by defendant Fresno Datsun along with other papers. He did not mail or deliver this notice or a similar document to the DMV. Doerksen admitted he never contacted or notified the DMV of the vehicle transfer and did not request anyone else to do so on his behalf. He knew the pink slip had to be signed and sent to the DMV. However, he assumed Fresno Datsun would take care of that task. He was unaware any other notification to the DMV was even required. At the time of the accident, he did not know whether or not anyone had notified DMV of the vehicle sale.

After Doerksen executed the notice of transfer, a Fresno Datsun salesman took all the relevant documents for review by the sales manager on duty. According to Fresno Datsun Sales Manager James Green the dealership would customarily put the documents in a package which would go down to the sales office for contract typing. Within a few hours or a day, the documents would generally be delivered back to the sales office. Green would then obtain the necessary financing, mark the proper legal owner on the documents and then send the documents back to the finance office where they were "routed" and "recorded." Green testified at deposition that Fresno Datsun could perform additional services including the changing of legal owners through the computer located in their business office, tearing the documents apart to file the used car documents, the new car documents and the cash contracts, and then notifying the DMV. He said this procedure usually takes no more than five days, as that is the period established by DMV. Because the instant transaction took place on a Thursday, Green presumed he would have obtained financing the next day. Since the business office of Fresno Datsun is closed on weekends the DMV notification would normally have been mailed on Monday or Tuesday of the following week, i.e., December 8 or 9, 1980.

The DMV actually received the notice of transfer by mail on December 15, 1980.

*Fresno Datsun to Brewer's Car Corner.*

Fresno Datsun sold the vehicle to Brewer's Car Corner (Brewer's) on December 9, 1980. However, the transaction may have been negotiated on December 8, 1980, and Brewer's in fact had possession of the vehicle for several days prior to December 9, 1980. Because Fresno Datsun had not yet acquired the pink slip on the vehicle from Doerksen's bank, it was not

given to Brewer's at the time of the transaction. Brewer's paid Fresno Datsun for the vehicle on January 5, 1981. By that time Fresno Datsun had actually acquired Doerksen's pink slip from the bank and notified Brewer's they had it. Brewer's acquired actual title to the vehicle at that point in time.

Upon the transfer of the vehicle to Brewer's, Fresno Datsun prepared and mailed another notice of transfer to DMV to show the sale of the vehicle to Brewer's. Fresno Datsun employee Barbara Hagen was responsible for DMV documentation. She claimed she sent this notice to DMV within "two working days" of December 9, 1980. However, the notice erroneously listed the license number of the vehicle as "414PLS" rather than "414PCS."

Frank Dias was manager of the registration records history division and custodian of the vehicle registration records for the DMV. He testified the DMV had no record of the Fresno Datsun notice. Because the license number of the vehicle was incorrectly listed, Dias testified it would not have matched up with the vehicle identification number (VIN) and the DMV computer would have simply rejected it.

*Brewer's to Fletcher.*

The vehicle was delivered to Brewer's several days before December 9, 1980. Defendant Fletcher, a salesman for Brewer's, saw the vehicle, liked it and drove it for a couple of days before signing papers to purchase it. The fact Fletcher operated the vehicle for several days is further established by the notice of transfer. The notice of transfer from Doerksen to Fresno Datsun showed mileage on the vehicle at the time of sale at 88,274 miles. The notice of transfer from Brewer's to Fletcher showed the mileage at 88,522 miles.

Fletcher physically took possession of the vehicle on the date he "signed the papers on it," which he thought was December 8 or 9, 1980. Fletcher signed a "security agreement (purchase money) motor vehicle and disclosure required by federal law" document and a "credit application." Both of these documents are dated December 8, 1980, and show the sale of the vehicle occurred between Brewer's and Fletcher on that date. Additionally, defendant John Brewer of Brewer's acknowledged the transaction occurred on the date those documents were signed.

In transferring the vehicle, Brewer's did not deliver the pink slip to Fletcher since they had not yet obtained it from Fresno Datsun. Upon acquiring the vehicle from Brewer's, Fletcher did not personally notify the DMV. However, Brewer's mailed a notice of transfer to the DMV listing

the date of the sale as December 9, 1980. Brewer's claimed the notice was mailed within five days of the date of sale. However, Brewer's has no record of when notice was actually sent, and no one from Brewer's has an independent recollection of when the notice was sent.[2]

*Course and Scope of Fletcher's Employment With Brewer's.*

On the date of the accident, defendant Fletcher was employed as a salesman by Brewer's. Fletcher testified it was customary every night for Brewer's salesmen to drive different cars from the lot to their respective homes. The purpose of this arrangement was to provide the salesmen with transportation between work and home. The accident of December 12, 1980, occurred when Fletcher was driving himself and another Brewer's salesman, Billy Tornow, to work. Following the accident Fletcher was given other vehicles from the lot to drive home.

## DISCUSSION

### I. DID THE TRIAL COURT PROPERLY GRANT SUMMARY JUDGMENT FOR DEFENDANTS BASED ON BREWER'S NOTICE OF TRANSFER?

Plaintiff contends the trial court erroneously granted summary judgment for defendants.

The trial court ruled: ". . . Judge Krum now having duly considered the matters, finds as follows: [¶] That there is no triable issue of the material fact that Defendant, John Brewer, dba Brewer's Car Corner, complied with the requirements of California Vehicle Code Section 5901, thus releasing said Defendant from liability pursuant to Vehicle Code Section 5602. [¶] The Court further finds that Brewer's timely compliance with said Vehicle Code Sections released all prior owners of the subject vehicle from liability."

■ The purpose of a summary judgment motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ The moving party bears the burden of furnishing supporting doc-

---

[2]Judy Brewer was the Brewer's employee responsible for all of the paperwork in connection with the transaction. She signed a "Statement of Error or Erasure" concerning a correction to the pink slip sometime after January 5, 1981. However, she backdated this form under penalty of perjury to December 9, 1980, when she knew that the date on the document was untrue. At the time of the backdating, Judy Brewer was aware of Fletcher's accident with plaintiff. She also acknowledged it was not her custom or habit to backdate such documents.

uments that establish the claims of the adverse party are entirely without merit on any legal theory. If the evidence accompanying the summary judgment motion is deficient, the moving party cannot rely on the unsupported allegations in his or her pleadings to prove the case. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) ■ The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed. Doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)

A summary judgment entered under Code of Civil Procedure section 437c is an appealable judgment as in other cases. (Code Civ. Proc., § 437c, subd. (*l*).) ■ An appellate court will uphold a summary judgment when the record establishes there is no cause of action. In considering the grant of summary judgment, the reviewing court is not confined to the sufficiency of the stated reasons. The validity of the ruling is reviewable, not the reasons therefor. A motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

Liability in the instant case is based on Vehicle Code section 17150. That section provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."

■ Ownership under the foregoing provision is not determined by the ordinary rules of ownership governing personal property. Rather, ownership liability is governed by the registration record and transfer procedures prescribed in the Vehicle Code. (*Laureano* v. *Christensen* (1971) 18 Cal.App.3d 515, 519 [95 Cal.Rptr. 872].) "Under the Vehicle Code, there may be several such 'owners' at any one time: One or more persons may be an 'owner,' and thus liable for the injuries of a third party, even though no such 'owner' possesses all of the normal incidents of ownership . . . ." (*Stoddart* v. *Peirce* (1959) 53 Cal.2d 105, 115 [346 P.2d 774] [construing predecessor statute to Veh. Code, § 17150].)

■ For purposes of imposing liability under Vehicle Code section 17150, the transferor of an auto continues to be an owner unless he complies with the prerequisites of Vehicle Code section 5602. (*Enis* v. *Specialty Auto Sales* (1978) 83 Cal.App.3d 928, 935-936 [148 Cal.Rptr. 255].)

Vehicle Code section 5602 provides: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability or criminal liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements:

"(a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for registration of the vehicle pursuant to the sale or transfer."

When a transferor fails to comply with applicable Vehicle Code transfer provisions, subsequent transferees and their permissive users are considered permissive users of the original transferring owner. The Fourth District Court of Appeal has noted: "We conclude the parties to a transfer of an automobile, accompanied by a delivery of possession, contemplate its use not only by the immediate transferee but also by subsequent transferees and by permittees of all such transferees; a transferor who continues to be an owner for liability purposes because of his failure to comply with pertinent provisions of the Vehicle Code, impliedly consents to the use of the automobile transferred by the immediate transferee, subsequent transferees and the permittees of all such transferees . . . ." [Citations omitted.] (*Uber* v. *Ohio Casualty Ins. Co.* (1967) 247 Cal.App.2d 611, 617 [55 Cal.Rptr. 720].) Compliance by a subsequent transferor protects both that transferor and previous transferors under Vehicle Code section 17150 upon receipt of the requisite notice by DMV. (*Borjesson* v. *Simpson* (1960) 177 Cal.App.2d 365, 372-373 [2 Cal.Rptr. 366] [construing predecessor statute to Veh. Code, § 17150].) The First District Court of Appeal has stated strict compliance with Vehicle Code section 5602 is required before a transferring owner may escape Vehicle Code section 17150 liability for an accident occurring before the DMV receives a notice of transfer. (*Laureano* v. *Christensen, supra,* 18 Cal.App.3d 515, 520-521.) However, *Laureano* involved an undated "certificate of ownership," not a "notice of transfer" as referred to in the opinion, and thus, should be limited in application to its own facts. The Supreme Court has noted: ". . . nothing contained herein indicates an opinion that in the event of failure to comply literally with the provisions of section 178 [now Veh. Code, § 5602], a transferor may be relieved of owner's liability by notice of or application for transfer of title which reach-

es the Department subsequent to the accrual of a cause of action against the operator of the vehicle." (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 120, fn. 15.)

■ In the instant case, the defendants did not obtain possession of the ownership certificate to the Camaro until after the accident. Therefore, Vehicle Code section 5602, subdivision (a) is inapplicable. We must then look to subdivision (b) of that section to determine whether defendants may avoid liability under Vehicle Code section 17150. Subdivision (b) requires notice to the DMV under Vehicle Code sections 5900 or 5901.

Vehicle Code section 5900 does not apply to the instant case. Vehicle Code section 5901 provides in relevant part: "(a) Every dealer or lessor-retailer, upon transferring by sale, lease, or otherwise any vehicle, whether new or used, of a type subject to registration under this code, shall, not later than the end of the fifth calendar day thereafter not counting the day of sale, give written notice of the transfer to the department at its headquarters upon an appropriate form provided by it.

". . . . . . . . . . . . . . . . . . . .

"(d) A 'sale' shall be deemed completed and consummated when the purchaser of that vehicle has paid the purchase price, or, in lieu thereof, has signed a purchase contract or security agreement, and taken physical possession or delivery of that vehicle."

■ The purpose of the notice statutes is to protect parties, to register transfers and sales of property and to protect third parties injured by operation of the vehicle. (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 117-119.)

Whether compliance by a subsequent transferor protects both that transferor and previous transferors under Vehicle Code section 17150 is the ultimate question here. However, we initially examine the notice of transfer from Brewer's to DMV.

■ Plaintiff contends the notice from Brewer's was defective because it listed the date of sale as December 9, 1980, instead of December 8, 1980. Vehicle Code section 5901, subdivision (d) provides a "sale" is deemed completed when the purchaser of a vehicle has paid the purchase price or signed a purchase contract or security agreement and taken physical possession or delivery of the vehicle. In the instant case, defendant Fletcher signed a purchase contract and security agreement dated December 8, 1980. However, Fletcher cannot recall the precise date of purchase and Fresno Datsun did not sell the Camaro to Brewer's until December 9. Plaintiff

maintains a "sale" within the meaning of Vehicle Code section 5901, subdivision (d) occurred on December 8. Plaintiff contends defendant Brewer's incorrectly listed the date of sale and thus lost its exemption from liability until the notice was actually received by the DMV.

We are concerned here with a notice of transfer of sale and the question of compliance with Vehicle Code section 5901, subdivision (a), to bring Brewer within the protection afforded by Vehicle Code section 5602. Thus, cases focusing upon "proper endorsement and delivery" of the ownership certificate are not helpful. However, *Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, an "ownership certificate" case, both frames the issue and offers some guidance in the resolution of that issue in the instant case.

*Stoddart* states in dicta that strict compliance with the notice provisions of the Vehicle Code is required before a former owner may escape the liability imposed by section 17150 (formerly § 402) in regard to an accident which occurs *before* notice is actually received by the DMV. (53 Cal.2d at p. 115.) There, a former owner, Peirce, had neglected to date *the ownership certificate* when he delivered it, after indorsement, to the purchaser, Nance Chevrolet Company. A properly dated indorsement was completed some 10 days later but still prior to the accident. In the interim, Nance Chevrolet Company had completed a "notice of transfer" as required by Vehicle Code section 5901, subdivision (a) which was in fact received by DMV approximately three weeks prior to the date of the accident. Our Supreme Court concluded the fact Peirce actually sold to Nance Chevrolet Company 10 days prior to the date of the properly dated indorsement was of no significance ". . . since the requirement of dating an endorsement (if it be a requirement) can only be for the purpose of fixing a date prior to which the transferor will be deemed as having been the owner." (53 Cal.2d at p. 122.) Thus, although *Stoddart* speaks of strict compliance with notice provisions to escape the statutory liability of Vehicle Code section 17150, our Supreme Court suggests in cases of a technical defect within the notice which does not affect or violate the purpose of the statute, i.e., to afford ready information to those injured or otherwise damaged by automobiles, concerning the persons liable under the owner's liability statute, our courts must look to the actual facts and effect in determining whether a notice of transfer pursuant to Vehicle Code section 5901, prepared and mailed prior to an accident but not actually received by the DMV prior to that date, is sufficient to relieve the former owner from liability pursuant to Vehicle Code section 5602.

The cases cited by plaintiff and defendants below, although instructive, are not specifically on point to the issue here. However, our independent research has also failed to disclose any case directly on point. In *Bamba-*

*cigno* v. *Bodenhausen* (1979) 88 Cal.App.3d 538 [151 Cal.Rptr. 827] the First District Court of Appeal affirmed a summary judgment for defendant in a personal injury action where defendant had neglected to insert the required odometer reading in the indorsed certificate of ownership, the registration card, or the notice of transfer. The court stated: "Failure to set out the odometer reading in the notice of transfer, endorsed certificate of ownership, or registration certificate in itself does not create any uncertainty as to the identity of the vehicle transferred, *the date of the transfer,* or the identity of the transferor or transferee." (*Id.,* at p. 541, italics added.)

In *Borjesson* v. *Simpson, supra,* 177 Cal.App.2d 365 [2 Cal.Rptr. 366], the First District Court of Appeal affirmed a judgment for defendants on the issue of vehicle ownership arising from a personal injury action. Defendant car dealer *omitted* the date of sale of the subject vehicle from the notice of sale to the DMV. The DMV received the defective notice on January 16 and the accident occurred on January 19. The court held the notice effective from January 16. However, the Court of Appeal declined to determine whether an omitted date would deprive a dealer and registered owner the benefits of Vehicle Code section 177, subdivision (b) (now § 5901) prior to receipt by DMV. The instant case is distinguishable from *Borjesson.* Here, Brewer's did not omit the date of sale; rather, it allegedly inserted an incorrect date of sale on the notice of transfer. Second, in the instant case, the DMV received the notice after the date of the accident.

In *Knudsen* v. *Faubus* (1962) 199 Cal.App.2d 659 [19 Cal.Rptr. 17], the Fourth District Court of Appeal affirmed summary judgment for the defendant in an automobile accident case. Defendant automobile dealer declared by affidavit he sold the subject automobile to codefendant the day before the accident, prepared the notice of sale that day and mailed it to the DMV that same afternoon or the morning of the accident, the next day. However, no issue was raised by counteraffidavit and the notice was presumably correctly completed by seller. In *Brown* v. *Superior Court* (1971) 15 Cal.App.3d 187 [93 Cal.Rptr. 33], this court granted a petition for writ of mandate to compel entry of summary judgment for defendant automobile dealer where the dealer transmitted a used car sale report to DMV within two days of the sale but an accident occurred before actual receipt by the DMV. We held our interpretation of Vehicle Code section 5602 consistent with *Stoddart* v. *Peirce, supra,* 53 Cal.2d 105. However, again in *Brown,* there was no contention of an incorrect or deficient notice.

In the instant case, defendant Brewer's notes it is "virtually undisputed" the sale took place on December 8 or December 9, 1980. Defendant contends the DMV received the notice of sale prior to 7 a.m. on Monday, December 15, 1980. Thus, the notice could not have been mailed more than

five days after the sale and the mailing requirements of Vehicle Code section 5901 were complied with. Both Judith and John Brewer declared under oath they never mailed a notice of transfer on a Sunday. The trial judge obviously concurred in this reasoning and we see no valid reason to conclude otherwise.[3]

Defendant Brewer's next contends it sold the vehicle to Fletcher on December 9 rather than December 8, 1980. According to the Fresno Datsun used car wholesale purchase order, defendant Brewer's bought the Camaro on December 9, 1980. Since Brewer did not buy the Camaro until December 9, it maintains it did not have the intent to transfer ownership to Fletcher on December 8, 1980. At deposition, defendant John Brewer reviewed a notice of sale or transfer from Fresno Datsun to defendant Brewer's. The notice was dated December 9 and Brewer testified the sale from Fresno Datsun to his dealership took place on that date.

In our view, the significant question here is not whether the sale in fact occurred on December 8 versus December 9. Rather, the question is whether the notice of transfer prepared by Brewer's and mailed to the DMV within the time limit of Vehicle Code section 5901, subdivision (a) was deficient in some manner and, as a consequence, Brewer's may not escape Vehicle Code section 17150 liability for an accident occurring before notice is received by the DMV. (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 115-119.) On the record it seems clear the sale from Brewer's to Fletcher could not have occurred prior to December 9. Brewer's did not itself acquire title to the Camaro until that date. More importantly, however, the subject notice of transfer contained all of the information required by Vehicle Code section 5901 and was timely mailed to the DMV. The notice of transfer contained all of the information necessary to inform those injured or otherwise damaged by the Camaro, concerning the persons liable under the owner's liability statute, Vehicle Code section 17150, from and after December 9, three days preceding the date of the accident. Thus, no factual issue was raised. Rather, the trial court was confronted with an issue of law: Did the notice of transfer here comply with the requirements of Vehicle Code sec-

---

[3]Plaintiff contends the declaration of Judy Brewer should not be accepted by the court to establish the notice was mailed within the requisite five days. Plaintiff contends Brewer's has no record of when the notice was actually sent, no one from Brewer's Car Corner has an independent recollection of when the notice was actually sent, the declarations of Mr. and Mrs. Brewer are "self-serving," Mr. Brewer conceded his wife was in charge of notifying the Department of Motor Vehicles and Mrs. Brewer admitted committing perjury by backdating a document after the accident. Plaintiff's argument must fail in light of the express language of Code of Civil Procedure section 437c, subdivision (e). Under that provision, summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of summary judgment. Here, the facts recited by Mr. and Mrs. Brewer were not contradicted by plaintiff.

tion 5901? The trial court concluded that it did and we agree with that conclusion. It is fundamental that we must give effect to the legislative intent in adopting registration laws. (See *People* v. *Superior Court* (1969) 70 Cal.2d 123, 132-133 [74 Cal.Rptr. 294, 449 P.2d 230].) Our Supreme Court stated in *Stoddart* the requirement of dating an indorsement could only be for the purpose of fixing a date prior to which the transferor will be deemed as having been the owner. It does not appear the date of sale in a notice of transfer should have any greater significance. The conflicting dates, if they did in fact conflict, did not create a triable issue of material fact as to the exemption of liability under Vehicle Code section 17150. The trial court found "that Brewer's timely compliance with said Vehicle Code Sections released all prior owners of the subject vehicle from liability."

Thus, we find that the trial court properly granted summary judgment as to defendant Brewer's. The question remains whether Brewer's compliance with Vehicle Code sections 5901, subdivision (b) and 5602, shields code-fendants Doerksen and Fresno Datsun from liability under section 17150 where, as here, Brewer's "notice of transfer" was not received by DMV until after the subject accident occurred.

Counsel in the instant case devoted much of their briefs and much of their oral argument to distinguishing the instant fact pattern from the relevant precedents. The distinctions are endless and inevitable. As the Supreme Court noted in *Stoddart:* ". . . the sections in the chapter have been amended and reamended over the years, and some new sections added, with the inevitable result that some inconsistencies appear. If a strict and literal interpretation of each section were indulged in, out of context to the whole, there would be some amazing results." (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 116.) Plaintiff would suggest such a result here. ▮ The purpose of the notice statutes is not to furnish a trap whereby some unwary individual may be held liable for the actions of another over whom he has no control. Rather, the purpose is to protect parties, to register transfers and sales of property, and to protect third parties injured by the operation of a vehicle. (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 115-119; *Somerville* v. *Providence Washington Indemnity Company* (1963) 218 Cal.App.2d 237, 246-247 [32 Cal.Rptr. 378].) ▮ It is an established rule of statutory construction that statutes are to be given a reasonable interpretation. Above all, the intention of the Legislature must be ascertained with due regard to the language used and the purpose sought to be accomplished. Absurd results are to be avoided if possible. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].)

▮ In the instant case, it would indeed be an absurd result to conclude that while Brewer's is relieved of any liability to plaintiff because of its

compliance with the notice requirements, Doerksen and Fresno Datsun, prior transferors, remain liable. Such result would also fly in the face of the purposes of the subject legislation, as defined by *Stoddart*, and would amount to a penalty which *Stoddart* states was not contemplated by the Legislature. (*Richie* v. *Tate Motors, Inc.* (1971) 22 Cal.App.3d 238 [99 Cal.Rptr. 223].) The purpose of the statute is to afford ready information to those injured or otherwise damaged by automobiles concerning the persons liable under the owner's liability statute. Moreover, the cases taken together lead to the logical conclusion liability should not be imposed on the predecessors. To hold the predecessors liable after a subsequent owner transmits a proper notice to DMV would mean the predecessor's liability could continue throughout numerous successive conveyances of title to the vehicle.

We conclude that any continuing liability on the part of predecessor owners, under the notice statutes here involved, terminates when a successor owner has properly complied with Vehicle Code sections 5602 and 5901. ▌ Thus, Doerksen and Fresno Datsun are shielded from liability under section 17150 and the trial court properly granted summary judgment to these codefendants.

## II. DID FRESNO DATSUN'S NOTICE OF TRANSFER TO THE DMV EXEMPT IT FROM LIABILITY?*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Randall, J.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1985.

---

*See footnote 1, *ante,* page 334.

†Assigned by the Chairperson of the Judicial Council.